IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CITIZENS AGAINST LONGWALL MINING, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05-3279 |
| COLT LLC and IEC (Montgomery) LLC, | ) ) ) ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant IEC (Montgomery) LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (d/e 39) and Defendant Colt LLC's Motion to Dismiss Second Amended Complaint (d/e 35). With leave of Court, Plaintiff Citizens Against Longwall Mining (CALM), an Illinois not-for-profit corporation, filed its Second Amended Complaint for Declaratory and Injunctive Relief (d/e 33) (Second Amended Complaint) on July 31, 2006. The Second Amended Complaint seeks a declaratory judgment and injunction barring Defendants Colt LLC (Colt) and IEC (Montgomery) LLC (IEC) from using the longwall method of

1

mining to extract coal from property the surface rights of which are owned by CALM members. Defendants move to dismiss the Second Amended Complaint for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). As set forth below, the Motions to Dismiss are denied.

BACKGROUND

The following facts are taken from the allegations of the Second Amended Complaint. Colt is a West Virginia limited liability company engaged in coal mining activities. Colt's members are domiciled in Nevada. Second Amended Complaint, ¶ 4. IEC is an Illinois limited liability company engaged in coal mining activities. Its members are domiciled in Alabama. Id., ¶ 5. The Second Amended Complaint alleges that none of CALM's members are citizens of West Virginia, Nevada, or Alabama, and further, that the amount in controversy, respecting each Defendant individually, exceeds $75,000, exclusive of interests and costs. Id., ¶¶ 1, 3.

In December 2003, IEC acquired the coal and appurtenant mining rights to approximately 85,000 acres in Montgomery County. In December 2005, Colt acquired separate coal and appurtenant mining rights to approximately 120,000 acres in Montgomery County at a purchase price of $6.2 million. The Second Amended Complaint asserts that IEC and Colt

2

are planning to mine their coal in Montgomery County using the longwall method of coal mining. According to the allegations of the Second Amended Complaint, both IEC and Colt have publically stated plans to longwall mine their coal in Montgomery County and have met repeatedly with representatives of the Illinois Office of Mines and Minerals to discuss plans for longwall mining in Montgomery County. Id., ¶¶ 16, 19, 22, & 28-30.

>The Second Amended Complaint explains longwall mining as follows:
>
>[A] method of coal removal in which subsidence of the surface is planned and intentional. Longwall mining is a high extraction method of coal mining in which a high-powered cutting machine shears away all coal between the floor and ceiling, leaving no support pillars. Movable roof supports advance as the bed is cut, allowing the roof to fall as the mining progresses.

Second Amended Complaint, ¶ 10. The Second Amended Complaint defines subsidence as "the lowering of strata overlying a coal mine, including the land surface, caused by the extraction of underground coal." Id., ¶ 11. According to the Second Amended Complaint, the lowering of surface strata can have devastating effects, including damage to the structural integrity of houses and buildings, lowering and cracking of roads, severance of utility lines, severance of oil and gas wells, creation of sinkholes or troughs,

prevention of farming and the loss of streams, water impoundments, well and aquifers. Id., ¶ 12. The Second Amended Complaint contrasts longwall mining with the "standard method" of mining coal, which it describes as the room-and-pillar method. Id., ¶ 13. According to the Second Amended Complaint, during room-and-pillar mining, surface support remains in the form of coal pillars. Id. The Second Amended Complaint asserts that "[u]nlike the standard method of room and pillar mining, the longwall mining method allows intentional subsidence of surface lands without the need to prevent subsidence to the extent feasible, maximize mine stability or maintain the value and reasonably foreseeable uses of surface lands." Id., ¶ 14.

CALM is an Illinois not-for-profit corporation with its principal place of business in Illinois. The Second Amended Complaint alleges that CALM's "members own real estate in Montgomery County, Illinois," and specifically, that its "members own surface rights over the mineral estates that Defendants have expressed an intent to subside using the longwall method and who would be injured by subsidence damage to their property and to the environment." Second Amended Complaint, ¶¶ 3, 33. The Second Amended Complaint asserts that "[m]embers of CALM have already

4

been injured by the longwall mining projects, which have diminished the marketability of their property due to the stigma of longwall mining." Id., ¶ 35.

According to the Second Amended Complaint, from approximately 1907 to 1921, property owners in Montgomery County deeded coal rights to various persons or companies (severance deeds). Second Amended Complaint, ¶ 31. These deeds severed the ownership of the surface estate from the ownership of the mineral estate. Id., ¶ 32. Both interests were transferred separately over time to the respective current owners. Id. Plaintiff argues that the severance deeds do not give the mineral owner the right to engage in longwall mining. The Second Amended Complaint asserts that, while numerous deeds are involved, Plaintiff has identified at most six language variations in the severance deeds relating to property owned by CALM members. Id., ¶ 37. Plaintiff seeks a declaratory judgment that, under any of the identified variations, the severance deeds do not give the mineral owners the right to longwall mine. Plaintiff also seeks a permanent injunction enjoining Defendants from conducting longwall mining pursuant to any deeds adjudicated not to contain the right to do so. Second Amended Complaint, p. 9.

ANALYSIS

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. They assert that the Second Amended Complaint is insufficient to cure the deficiencies noted by the Court in ruling on the previous motions to dismiss. See Opinion, dated March 1, 2006 (d/e 20); Opinion, dated July 13, 2006 (d/e 32). Defendants assert that CALM fails to allege a substantial controversy of sufficient immediacy to warrant a declaratory judgment. IEC further asserts that CALM fails to allege the requisite amount in controversy for diversity jurisdiction.

In considering Defendants' Motions to Dismiss for lack of subject matter jurisdiction, the Court must accept the Complaint's well-pleaded factual allegations as true and must draw all reasonable inferences from those allegations in favor of the Plaintiff, as the non-moving party. Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage Dist., 382 F.3d 743, 751 (7th Cir. 2004). In deciding a 12(b)(1) motion, however, the Court may consider the question of jurisdiction on the basis of evidentiary matters presented by affidavit or otherwise. Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979). "[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional

6

facts by a preponderance of the evidence." Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 543 (2006).

A.    Justiciability

The Court briefly reiterates the basic principles of justiciability set forth in detail in its prior Opinions. Under Article III of the United States Constitution, a party seeking to invoke federal court jurisdiction must present an actual case or controversy. See Flast v. Cohen, 392 U.S. 83, 95 (1968). Under the case or controversy requirement, a plaintiff seeking to invoke the power of the federal court bears the burden of demonstrating: (1) an "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and the conduct complained; and (3) that a favorable decision likely will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). In the declaratory judgment context, an actual controversy ripe for decision exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v.

Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).  "[P]leadings in declaratory judgment actions are subject to the same rules of notice pleading as all other actions."  GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 620 (7th Cir. 1995).

Defendants argue that CALM fails to allege actual, impending injury. However, according to the Second Amended Complaint, IEC and Colt own coal and mining rights to property within Montgomery County, including property for which CALM members hold the surface rights.  CALM alleges that both IEC and Colt have publically stated plans to longwall mine their coal in Montgomery County.  Significantly, CALM alleges that its members have already been injured by the threat of longwall mining in Montgomery County in that the marketability of their property has diminished due to the stigma of longwall mining.  If true, these allegations would constitute a concrete invasion of a legally protected interest.  Under the allegations of the Second Amended Complaint, CALM members have already suffered an injury in fact, i.e., diminished marketability of their property interests. Thus, the issue is ripe for determination.  As the Court has previously determined, CALM has standing to the extent its members are personally injured.  Opinion, dated March 1, 2006, p. 8.  Therefore, the allegations of

the Second Amended Complaint satisfy Article III. Defendants' requests to dismiss on this basis are denied.

### B. 28 U.S.C. § 1332

The Court turns to the question of diversity jurisdiction under 28 U.S.C. § 1332. IEC asserts that CALM again fails to establish the requisite amount in controversy. In order for diversity jurisdiction to exist under 28 U.S.C. § 1332, the parties must be of diverse citizenship and the amount in controversy must exceed $75,000, exclusive of interest and costs. In a suit for equitable relief, "the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347 (1977). As the Court noted in its July 13, 2006, Opinion, the Seventh Circuit has adopted the "either viewpoint" rule for valuing the object of the litigation, under which "the object may be valued from either perspective-what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." Macken v. Jensen, 333 F.3d 797, 799-800 (7th Cir. 2003) (citing In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 609-10 (7th Cir. 1997); Uhl v. Thoroughbred Technology & Telecommunications, Inc., 309 F.3d 978, 983-84 (7th Cir. 2002)).

The Court turns first to an analysis of the value of the object of the litigation from the Defendants' viewpoints. IEC challenges the sufficiency of CALM's jurisdictional allegations, asserting that "the Second Amended Complaint is devoid of any allegations regarding the economic effect declaratory and injunctive relief would have on IEC." Defendant IEC (Montgomery) LLC's Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (d/e 40), p. 5. This is a facial challenge. An examination of the Second Amended Complaint refutes IEC's argument. The Second Amended Complaint asserts verbatim as follows: "[t]he amount in controversy, respecting each Defendant individually exceeds $75,000, exclusive of interests and costs." Amended Complaint, ¶ 1. This allegation is sufficient, on its face, to support jurisdiction. See Hammes v. AAMCO Transmissions, Inc., 33 F.3d 774, 778 (7th Cir. 1994) ("In a diversity case, for example, it is not enough for the plaintiff to allege that the claim is within the diversity jurisdiction; the complaint must allege the citizenship of the parties and the amount in controversy.") Because the allegations of the Second Amended Complaint, on their face, support a finding that the requisite amount in controversy exists from the viewpoint of each of the Defendants individually, the Court need not consider the

value from Plaintiff's viewpoint.

IEC does not contest the truth of CALM's allegation that the amount in controversy, respecting each Defendant individually, exceeds $75,000. Considering CALM's statement that the amount in controversy exceeds $75,000 with respect to each Defendant individually, the Court cannot say to a legal certainty that the controversy is worth less than the jurisdictional minimum from the perspective of each Defendant. IEC's request to dismiss for failure to satisfy 28 U.S.C. § 1332's amount in controversy requirement is denied.

## CONCLUSION

THEREFORE, Defendant IEC (Montgomery) LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (d/e 39) and Defendant Colt LLC's Motion to Dismiss Second Amended Complaint (d/e 35) are DENIED. Defendants are directed to answer Plaintiff's Second Amended Complaint on or before March 15, 2007. The matter is referred to Magistrate Judge Cudmore for further scheduling.

IT IS THEREFORE SO ORDERED.

ENTER:   February 9, 2007.

FOR THE COURT:

                                           s/ Jeanne E. Scott
                                          JEANNE E. SCOTT
                               UNITED STATES DISTRICT JUDGE